STATE of South Dakota, Plaintiff
and Appellant,

v.

Robert Antoine ARPAN, Defendant
and Respondent.

No. 12548.

Supreme Court of South Dakota.

April 12, 1979.

Gene Paul Kean, State's Atty. for Minnehaha County, Sioux Falls, for plaintiff and appellant.

Richard D. Hurd, Sioux Falls, for defendant and respondent.

MORGAN, Justice.

This is an intermediate appeal from an order of the Circuit Court, Minnehaha County, Second Judicial Circuit suppressing the oral and written statements of defendant on the grounds of violation of his right to counsel as guaranteed by our State and Federal Constitutions.[1]  The circuit court

1. The 6th Amendment to the United States Constitution reads as follows:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public

ruled that defendant, who had requested counsel before interrogation began, had at no time waived his request for counsel and therefore that the continued questioning by police detectives resulting in the elicitation of a statement from defendant was a violation of his constitutional rights.

The statements in dispute, a typed transcript of a taped interview, detailed an attack on defendant by the two alleged victims as he lay intoxicated on his bed in a riverside shack in Sioux Falls. Left unconscious in front of the shack, he awoke and was again attacked. He wrested a club from one of the assailants and struck back in the dark, eventually felling both. Fearful of further attack when the assailants awoke, he packed his belongings in order to, as he said, "Get the hell out of here!"

In resisting the motion to suppress, the state's attorney indicated that the statements were the only hard evidence that the State had to link the defendant to the alleged crime. The trial judge apparently first indicated that he would deny the motion to suppress, but upon reflection changed his mind and entered findings of fact and conclusions of law and an order of suppression. The State then filed its motion for intermediate appeal to this Court. We affirm the circuit court's order.

For the factual background we summarize the trial court's findings of fact, all of which we find to be supported by the record of the suppression hearing.

On Saturday, April 29, 1978, defendant, while intoxicated, was arrested for the murder of Richard L. Herman and Howard F. DeWitte. At 9:00 on Sunday morning, April 30, 1978, while in custody, defendant was contacted by police officers of the Sioux Falls Police Department who advised him that they desired to interview him concerning the deaths. Defendant told the detectives that he needed a drink and that he was sore and injured and needed medical attention. He was advised that that would be taken care of after the interview was finished.

Defendant, upon being orally advised of his *Miranda* rights, requested an attorney, whereupon he was taken to a desk near the front of the detective bureau, was given a phone book which was opened to the "Attorneys" section of the yellow pages and was told that he could use a phone on the desk. Defendant, however, did not have his glasses, which he needs for reading, and could only read the bold print in the phone book. The only name that he could make out, listed in bold print, was a part-time city prosecutor. The detectives declined to recommend an attorney and advised defendant that it was Sunday and that he would probably have to call an attorney at home.

Finally, defendant, a person of moderate intelligence whose education ended during the tenth grade, asked the police officers what they wanted to know. After once again being advised of his *Miranda* rights, he executed a waiver of those rights and proceeded to give an oral statement concerning the deaths. The statement was taped and was subsequently reduced to writing on May 1, 1978, and was executed by the defendant. At no time subsequent to his request for counsel did defendant state he did not want an attorney.

Based on its findings of fact, the trial court then concluded as a matter of law (1)

trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel for his defense. Article VI, § 7 of the South Dakota Constitution reads as follows:

In all criminal prosecutions the accused shall have the right to defend in person and by counsel; to demand the nature and cause of the accusation against him; to have a copy thereof; to meet the witnesses against him face to face; to have compulsory process served for obtaining witnesses in his behalf, and to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

that the State had failed to prove beyond a reasonable doubt that defendant made the oral and written statement after a knowing, intelligent, and voluntary waiver of his right to counsel as well as his privilege against self-incrimination; and (2) that defendant's limited education, moderate intelligence, difficulty with the English language, and difficulty in reading without his glasses, together with the other circumstances of the case, left the court with a reasonable doubt that the statements made by defendant were voluntary and taken after providing defendant with a meaningful opportunity to consult with counsel.

The issue before us then, as briefed by counsel,[2] is whether the statement was voluntary and taken after providing defendant with a meaningful opportunity to consult with counsel and after a knowing, intelligent, and voluntary waiver of his right to counsel.

▆▆▆ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court in ruling on the admissibility of a confession resulting from a custodial interrogation, warned that

> [the defendant] has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. *If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.* (Emphasis added.) 384 U.S. at 444, 445, 86 S.Ct. at 1612

While the language of *Miranda* is strictly enforced to prohibit any questioning of an accused once counsel has been requested,[3] decisions since *Miranda* have made it clear that the accused can later voluntarily waive the previously invoked right to counsel. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976); *United States v. Brown*, 569 F.2d 236 (5th Cir. 1978); *United States v. Hodge*, 487 F.2d 945 (5th Cir. 1973); *State v. Greene*, 91 N.M. 207, 572 P.2d 935 (1977); and *People v. Harris*, Colo., 552 P.2d 10 (1976). This waiver need not be in any certain form. It can be written or oral, express or implied. *Klingler v. United States*, 409 F.2d 299 (8th Cir. 1969); *Pierce v. Cardwell*, 572 F.2d 1339 (9th Cir. 1978); *People v. Harris*, supra. Whether such a waiver has indeed been made is a question of federal constitutional law. *Brewer v. Williams*, supra; *Maglio v. Jago*, 580 F.2d 202 (6th Cir. 1978). Moreover, a valid waiver will not be presumed simply from the fact that a confession was eventually obtained. *Miranda v. Arizona*, supra; *Pierce v. Cardwell*, supra; *People v. Harris*, supra.

The standard to be used by a court in determining whether or not an accused has effectively waived his right to counsel is found in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937), wherein the United States Supreme Court stated:

> It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an *inten-*

---

**2.** Oral argument was waived and case was submitted on the briefs.

**3.** Although it is not an issue in this case, several Federal Court of Appeals decisions have drawn a distinction between continued questioning and informing the accused of what evidence the police have against him or other conversations which do not fall within the realm of "interrogation." In *Pierce v. Cardwell*, 572 F.2d 1339 (9th Cir. 1978), that court stated:

> "While continued questioning of a suspect about his involvement in a crime is impermis-

sible after a request for an attorney, and statements made thereafter are inadmissible in the absence of a waiver, the police are allowed to present incriminating evidence to the suspect even after a request for an attorney has been made." 572 F.2d at 1341. See also, *Nash v. Estelle*, 560 F.2d 652 (5th Cir. 1977); *United States v. Hodge*, 487 F.2d 945 (5th Cir. 1973); *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976) and *United States v. Rodriguez-Gastelum*, 569 F.2d 482 (9th Cir. 1978).

*tional relinquishment or abandonment* of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. (Emphasis added.) 304 U.S. at 464, 58 S.Ct. at 1023.

While the fact situation in *Zerbst* involved the waiver of counsel at trial, the same "heavy burden" has been adopted for application in cases involving waiver of a previously invoked right to counsel by an accused in a long line of federal and state cases including *Brewer v. Williams*, supra.

We would also point out, since a sizeable number of cases which were cited as authority in appellant's brief are cases involving an accused's waiver of the right to remain silent, that we find a substantial difference between an accused's waiver of the right to remain silent and the waiver of the right to counsel once a desire to have counsel has been indicated. These rights are readily distinguishable and must be judged separately. The Sixth Circuit Court of Appeals, in *Maglio v. Jago*, supra, said:

> The burden is on the State to establish waiver in every case in which it seeks to introduce a statement taken without the presence of counsel. That burden becomes far more difficult, if not impossible, to sustain when the record shows that a request for counsel was made which was not honored before questioning continued. 580 F.2d at 205

Similarly, in *People v. Parker*, 84 Mich.App. 447, 269 N.W.2d 635, 638 (1978), the court stated:

> While we reject a *per se* rule in this case, we do recognize differences between a suspect's assertion of a right to remain silent and his assertion of a right to counsel. A waiver made after assertion of a right to counsel should be viewed with skepticism; once an individual decides that he is incapable of communicating with authorities absent counsel, we should be very suspicious of a later, counselless waiver. (Citation omitted.)
>
> In light of this difference, a more careful scrutiny of the suspect's waiver is required than for a waiver made prior to the assertion of right to counsel or after assertion of the right to remain silent. (Cites omitted.) In particular, police should not be allowed to ignore a suspect's request for a lawyer; interrogation must cease until, at the least, a reasonable *opportunity* to obtain counsel has been afforded. The normal heavy burden which the prosecution bears in proving the validity of a waiver should be of a very high standard where waiver of a previously invoked right to counsel is involved.

See also, *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (White, J., concurring)[4] and *United States v. Brown*, supra (Simpson, Cir. J., dissenting).

Bearing these principles, standards and considerations in mind, we return to the facts of the case before us to determine whether, having invoked his right to counsel as conceded by the State,[5] defendant

---

**4.** Justice White commented:

"[T]he reasons to keep the lines of communication between the authorities and the accused open when the accused has chosen to make his own decisions are not present when he indicates instead that he wishes legal advice with respect thereto. The authorities may then communicate with him through an attorney. More to the point, the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision that the authorities' insistence to make a statement without counsel's presence may properly be

viewed with skepticism." 423 U.S. at 110, n. 2, 96 S.Ct. at 329.

**5.** The testimony of one of the detectives at the hearing clearly indicates that defendant made such a request. Some cases wherein very minimal statements have been construed as requests for an attorney include *Maglio v. Jago*, 580 F.2d 202 (6th Cir. 1978) (the accused stated that " 'maybe he ought to have one' "); *People v. Harris*, Colo., 552 P.2d 10 (1976) (the accused asked " '[w]hen can I get a lawyer' ", but never stated specifically that he wanted one); and *People v. Lewis*, 47 Mich.App. 450, 209

voluntarily and effectively waived that right.

In making our determination, we find it helpful to examine the rulings of other courts in similar case situations. In *Maglio v. Jago*, supra, the fact that the defendant's rights were twice read to him did not sustain the State's burden to prove an intentional relinquishment or abandonment of his previously invoked right to counsel. In *People v. Harris*, supra, the fact that the defendant had signed the waiver form before making incriminating statements did not convince the court that a valid waiver existed. Likewise, the defendant's questions concerning whether he could obtain counsel at that late hour and his subsequent statement to "forget it" did not constitute a valid waiver in *People v. Lewis*, 47 Mich. App. 450, 209 N.W.2d 450 (1973).

█ In examining these and other cases and in reviewing the facts as contained in the record and as found by the circuit court, we conclude that the circuit court correctly concluded as a matter of law the statements were not given after a knowing, intelligent, and voluntary waiver of the right to counsel. A number of considerations lead us to that conclusion.

First, defendant was obviously intent on obtaining an attorney but was prevented from doing so, not by his own will, but by a combination of circumstances: his poor eyesight and lack of his glasses; the fact that it was Sunday and an attorney would have to be contacted at home; his obvious indigency and inability to hire counsel of his choosing to begin with; and the obdurate attitude of the detectives when he was obviously in a helpless situation. Under the circumstances we find his statement "What

do you want to know?" to be simply an act of frustration and it certainly does not constitute a knowing, intelligent and voluntary waiver.

We fully realize that it is not the place of the police to obtain, locate or recommend attorneys for those who are being interrogated. In most situations, the accused is able to do so himself/herself. In a situation such as the instant one, however, where the accused expressed a desire to have an attorney but was unable to obtain one himself, the police should have throttled their quest for information until the court could appoint an attorney for the accused and they should be wary of accepting any type of waiver of the accused's previous request for counsel.

█ Finally, we are disturbed by the fact that defendant was told he could have medical care after the interview was finished. Appellant attempted to minimize this fact and it may well be that the officers were prompted more by excessive zeal to wrap up the investigation than an intent to coerce the accused; however, that type of action is in derogation of constitutional principles and cannot be condoned.

Therefore, we affirm the order of the circuit court suppressing defendant's oral and written statements and remand the cause to the circuit court.

All the Justices concur.

N.W.2d 450 (1973) (the accused asked whether it was possible to obtain an attorney at that early hour, but never specifically stated that he wanted one).